# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN CHABOREK, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 17-940 |
| v. | : | |
| | : | |
| ALLSTATE FINANCIAL SERVICES, LLC, | : | |
| MEGAN GAARDSMOE, and KEVIN | : | |
| POWELL, | : | |
| Defendants. | : | |

**MCHUGH, J.**                                                                              June 5, 2017

## MEMORANDUM

This is a case arising out of a fraudulent "Ponzi" scheme on the part of a now deceased Allstate broker, brought by one of its victims. In addition to suing Allstate, Plaintiff Brian Chaborek has named two Allstate supervisors individually. Allstate takes umbrage at their inclusion as defendants, contending that they were fraudulently joined to defeat diversity. Because Allstate cannot meet the heavy burden imposed on a party claiming fraudulent joinder, this case will be remanded to state court.

## Background

Paul Godlewski was an insurance broker for Allstate, where he was supervised by Megan Gaardsmoe and Kevin Powell. On the side, and for a long time unbeknownst to Allstate, he ran a Ponzi scheme disguised as a venture capital fund called "GEIVC." He advertised GEIVC on social media and promoted it in numerous televised interviews. When people "invested" with him, he took their money and placed it in a bank account from which he withdrew and spent money at will.

1

Godlewski ran GEIVC undetected for a number of years. In 2014, however, the New Jersey Office of the Attorney General began investigating him. In October 2014, prosecutors contacted Allstate "regarding certain of Godlewski's business activities," Compl. at 6, and Allstate undertook an investigation of its own. In early 2015, Allstate fired Godlewski and terminated his FINRA registration. On June 9, 2015, Godlewski died while snorkeling in Turks & Caicos.

Godlewski is alleged to have swindled Plaintiff out of more than $500,000. Specifically, he induced Plaintiff to make two "investments" in GEIVC: one for $500,000 in 2010, and another for $10,738.15 in April 2015. In his dealings with Plaintiff, Godlewski used Allstate's logo, stationery, and office. Moreover, he led Plaintiff to believe that GEIVC was a fund approved and monitored by Allstate.

In 2014, Godlewski hired Plaintiff as an Allstate agent and stated his intention to sell his insurance practice to Plaintiff when he retired. Late that year, while Allstate was investigating Godlewski, Godlewski convinced Plaintiff to purchase the agency from him. Gaardsmoe and Powell supervised and approved this transaction. Plaintiff alleges that as he and Godlewski were negotiating the specifics of the deal, Allstate fired Godlewski and terminated his FINRA registration. Gaardsmoe and Powell, however, allowed Godlewski to continue to represent himself as an Allstate employee and to use his Allstate email address, telephone number, voicemail, and office in the agency sale.

The Complaint alleges that Gaardsmoe and Powell also reviewed and approved Plaintiff's financial documents in preparations for the sale. These documents stated that in early 2015, Plaintiff had more than $600,000 invested in GEIVC. Though they knew by this time that GEIVC was a fraud, Gaardsmoe and Powell did not tell Plaintiff that he had been scammed.

Instead, they purportedly told him "that Godlewski had been a model broker-dealer, and suggested that [Plaintiff] accept Godlewski as his 'mentor' and discuss business problems and dilemmas" with him. Compl. at 8. In April 2015, Plaintiff purchased the Allstate office from Godlewski and made his second ($10,738.15) investment with GEIVC.

Plaintiff has not requested rescission of, or damages flowing from, his purchase the Allstate office. Rather, he claims that Allstate, Gaardsmoe, and Powell are liable for making various misstatements that led him to lose approximately $600,000 in Godlewski's Ponzi scheme.

## Standard of Review

Under the doctrine of fraudulent joinder, a defendant may remove a non-diverse case if it can establish that all in-state defendants were sued solely to prevent removal to federal court. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). But defendants alleging fraudulent joinder bear a "heavy burden of persuasion," *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) – "if there is even a possibility that a state court would find that the complaint states a cause of action," then the case must be remanded. *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006) (internal quotation marks omitted). To prevail, the defendant must show that there is "no reasonable basis in fact or colorable ground supporting the claim against the joint defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (internal quotation marks omitted). The removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

My review at this stage is limited: the issue is not whether Plaintiff has stated a claim upon which relief can be granted. A defendant claiming a fraudulent joinder has an even heavier burden to carry than on a motion to dismiss. *Batoff*, 977 F.2d at 852. As Judge DuBois elegantly stated the rule, fraudulent joinder is "reserved for situations where recovery from the non-diverse defendant is a clear legal impossibility." *Salley v. AMERCO,* 2013 WL 3557014 at *3 (E.D. Pa.) (July 15,2013). I have jurisdiction only to determine whether I have jurisdiction. I will thus look no further into the merits of the case than is necessary to make that determination.

**Analysis**

**I.  Plaintiff has set forth at least two potentially valid claims against the individual defendants under Pennsylvania law.**

Plaintiff has brought seven claims against Gaardsmoe and Powell. In my view, at least two of Plaintiff's claims have a possibility of success. I will address them each briefly below.[1]

*A. Negligent Misrepresentation*

Plaintiff claims that Gaardsmoe and Powell made negligent misrepresentations about Godlewski's employment with and supervision by Allstate, and that those misrepresentations both prevented him from asking Godlewski for his money back while Godlewski was still alive and led him to invest additional money in GEIVC.

To state a negligent misrepresentation claim in Pennsylvania, a plaintiff must establish that (1) Defendants misrepresented a material fact, (2) under circumstances where they should have known of its falsity, (3) with an intent to induce another to act on it, and (4) which resulted in an injury to a party acting in justifiable reliance on it. *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects & Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. Ct. 2015).

---

[1] I express no views on Plaintiff's remaining claims against Gaardsmoe and Powell. The two claims discussed here are closely related. Their viability is enough to make clear that fraudulent joinder has not occurred – so federal jurisdiction does not exist. There is no need to go further.

4

Plaintiff has alleged that Powell and Gaardsmoe made misrepresentations about Godlewski's employment status that they knew were false, and that they did so in order to convince Plaintiff to go through with the purchase of Godlewski's Allstate practice. It appears that the strongest claims against the individual defendants involve only a small portion of the overall loss: the $10,738.15 he gave to Godlewski in April 2015. But the amount of the claim is irrelevant to its legal validity. [2]

Defendant claims that Gaardsmoe and Powell, as individuals, owed no duty of care to Plaintiff – with the result that they cannot be liable to him for negligent misrepresentation or fraud. It is true that initially Gaardsmoe and Powell owed no duty to Plaintiff. But under Pennsylvania law, once someone undertakes to make representations, a duty is created, and liability can follow from negligent, reckless, or intentional false statements upon which Plaintiff could reasonably rely. *See generally Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882 (Pa. 1994); *see also Dicio v. Wells Fargo Bank, N.A.*, 2015 WL 8276585, *8 (E.D. Pa.) (Nov. 4, 2015) (Mitchell, J); *Bionix Development Corp v. Sklar Corp.*, 2009 WL 335154, *4 (E.D.Pa.) (Oct. 14, 2009) (Joyner, J.); *In re Lewis*, 478 B.R. 645 (Bankr. E.D.Pa.) (Jul. 19, 2012) (FitzSimmon, J.).

Defendants rely upon *Coomes v. Allstate Insurance Co.*, 2011 WL 4005325 (S.D. Ohio) (Aug. 9, 2011), which is decided under Ohio law. There, an Allstate agent began law school under the mistaken impression that he would be able to both practice law and sell insurance for Allstate after his graduation, when in fact Allstate forbids its agents from practicing law. In addition to suing Allstate, he sued his supervisors, whose alleged representations and omissions led him to this mistaken conclusion. The court in *Coomes* held that the plaintiff raised no

---

[2] I t would also appear that counsel was attempting to plead the facts in a responsible way, alleging that "at least" a certain portion of Plaintiff's losses could be attributed to the individual Defendants. As phrased, the Complaint holds open the possibility that their liability could be broader

colorable claims against his former supervisors, because "any alleged wrongdoing [was] a corporate wrongdoing and not one where individual liability exists." *Id.* at *5.

*Coomes* addressed different circumstances. There, the individual defendants' duty to the plaintiff stemmed directly from performance of their duties as representatives of Allstate. Their alleged error was a breach of a corporate duty to an employee of the corporation – misstatements of company policy made during company trainings. Here, the claim asserted has nothing to do with Powell and Gaardsmoe's discharge of their duties on behalf of Allstate. If liability is imposed it will be because they, as individuals, made false statements to Plaintiff about Godlewski so that Plaintiff would buy Godlewski's insurance practice, insulating them from losses associated with Godlewski's firing. In short, the misconduct alleged is personal in nature.

### B. Common Law Fraud

Plaintiff claims that Powell and Gaardsmoe's misrepresentations constituted not only negligent misrepresentation, but also fraud. The difference between negligent misrepresentation and fraud in Pennsylvania is intent – in fraud, a statement must be made with actual knowledge or recklessness (rather than negligence) as to its falsity. *See Kit v. Mitchell*, 771 A.2d 814, 819 (Pa. Super. Ct. 2001); *Gruenwald v. Adv. Comp.* 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999). Fraud must be proven by clear and convincing evidence and pleaded with particularity. *See Sewak v. Lockhart,* 699 A.2d 755, 759 (Pa. Super. Ct. 1997); Fed. R. Civ. P. 9(b). Because Plaintiff has alleged that Powell and Gaardsmoe had actual knowledge that their statements were untrue, a reasonable court could find that he has pled a claim for fraud as well as negligent misrepresentation.

## II. The tactical decisions of Plaintiff's counsel are legally irrelevant to the issue of fraudulent joinder.

A significant portion of Defendants' briefing focuses upon what the defense presumes was the thought process of counsel for Plaintiff in crafting the complaint. The defense speculates that the estate of Godlewski, the architect of the fraud, was not named as a defendant because there is a pending claim against it in the Chester County Orphans' Court (which has exclusive jurisdiction), making it necessary for Plaintiff to name other non-diverse parties to avoid federal jurisdiction. *See* Opp. to Mot. to Remand at 2 n.2. It criticizes Plaintiff for initially filing suit in Philadelphia County, rather than Chester County, where the cause of action purportedly arose, even as it recognizes that such a filing is "permissible under Pennsylvania's venue rules." *Id.* at 1. It goes on to argue that the individual defendants were named "for the sole purpose of defeating diversity jurisdiction." *Id.* at 9.

Assuming that counsel's likely motivation in naming individual defendants was in fact to seek the most favorable forum – the very same goal Allstate has in opposing remand – a strategic purpose of avoiding federal jurisdiction is neither improper nor legally relevant. As the Supreme Court held in *Mecom v. Fitzsimmons Drilling Co. Inc.* 284 U.S. 183, 189 (1931), "in a removal proceeding the motive of a plaintiff joining defendants is immaterial, provided there is in good faith a cause of action against those joined." Even a specific intent to avoid federal jurisdiction is of no moment: "The fact that the plaintiffs' motive for joining a [non-diverse][3] defendant is to defeat diversity is not considered indicative of fraudulent joinder." *Abel v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 32 (3d Cir. 1985) (Higginbotham, J.). The sole question is

---

[3] In *Abel,* the non-diverse defendants were not even identified by name, but rather sued as "John Does."

7

whether there is a potentially viable claim against the non-diverse defendants. Stated differently, lawyers are expected to be zealous advocates for their clients within the bounds of the law.

In that regard, it also bears mention that beyond venue, there are many relevant considerations in the choice of defendants. Personal involvement as a party may have an impact upon how forthcoming a witness is as to the potential involvement of others. In some cases when an individual party is named as a defendant, he or she retains separate counsel, and the advice given by such counsel may differ dramatically, particularly where the individual's employer is also a defendant. And in some cases, where the conduct involved is uniquely personal in nature, such as fraud cases, a plaintiff might as a matter of principle seek to impose direct liability upon any party the plaintiff sees as responsible for his losses. As the Supreme Court has recognized in the related area of federal preemption, a plaintiff remains master of his complaint, and can make choices accordingly. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

## Conclusion

Defendants have not met the "heavy burden of persuasion" that accompanies allegations of fraudulent joinder. *Batoff*, 977 F.2d at 851. Because a reasonable Pennsylvania court could find that Plaintiff has stated a claim against Kevin Powell and Megan Gaardsmoe, diversity jurisdiction does not exist in this case. Accordingly, it will be remanded to the Pennsylvania Court of Common Pleas.

    /s/ Gerald Austin McHugh
United States District Judge